# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JEREMY A. TIGAN
(302) 351-9106
jtigan@morrisnichols.com

July 15, 2022

The Honorable Richard G. Andrews  *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware
844 North King Street
Room 6325, Unit 9
Wilmington, DE 19801-3555

Re:  *San Rocco Therapeutics, LLC v. bluebird bio, Inc., et al.*
     C.A. No. 21-1478 (RGA)

Dear Judge Andrews:

We write on behalf of Defendants bluebird bio, Inc. and Third Rock Ventures, LLC (together, "Defendants") in response to the Court's request to indicate Defendants' position on the issue of who is to decide arbitrability under the 2020 Settlement Agreement (the "Agreement"): the Court or the arbitrator. (D.I. 70.)  For the reasons explained below, Defendants submit that, in accordance with applicable federal precedent, including *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), and governing New York law, the parties to the Agreement intended that the arbitrator would have the primary power to decide arbitrability.  Nevertheless, as also explained below, Defendants respectfully submit that, in light of the particular context of this case and the relief sought in the pending Motion to Dismiss (D.I. 44), this issue, unlike in *First Options*, 514 U.S. at 942, may not have "practical importance" or "make a critical difference" to the "party resisting arbitration" (*i.e.*, Plaintiff San Rocco Therapeutics, LLC).

When deciding whether parties agreed to arbitrate arbitrability, the Supreme Court has held that courts generally "should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944.[1]  This general rule, however, is subject to an "important qualification," *i.e.*, "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id*. at 944 (internal quotations omitted).  Moreover, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and, "[i]n those circumstances, a court possesses

---

[1]  In *First Options*, unlike here, the arbitrators had already decided the issue of arbitrability as well as the merits of the dispute, after which the losing party sought to appeal the arbitrators' decision on arbitrability.  514 U.S. at 941-42.

The Honorable Richard G. Andrews
July 15, 2022
Page 2

no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019).

Here, because the Agreement states that it "shall be governed by the laws of the State of New York" (D.I. 45, Ex. C, § 6), New York contract interpretation principles apply. Under New York law, "[w]hen interpreting a contract, the court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized." *See e.g.*, *NRT New York, LLC v. Harding*, 131 A.D.3d 952, 954 (N.Y. Sup. Ct., App. Div. 2d Dep't, 2015) (internal quotations omitted). New York courts, including the New York Court of Appeals, have consistently ruled that parties evince a "clear and unmistakable" agreement to arbitrate arbitrability, satisfying the *First Options* standard, when their agreement "incorporat[es]" by reference arbitral institution rules that make arbitrability subject to arbitration. *Matter of Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 46-47 (N.Y. 1997); *see also Garthon Bus. Inc. v. Stein*, 30 N.Y.3d 943, 944 (N.Y. 2017); *Revis v. Schwartz*, 192 A.D.3d 127, 133-141 (N.Y. Sup. Ct., App. Div. 2d Dep't 2020).

The arbitration provision is set forth in Section 7 of the Agreement, and states as follows:

> Dispute Resolution. The Parties shall make all reasonable efforts to resolve any dispute concerning this Confidential Settlement Agreement, its construction, or its actual or alleged breach, by face-to-face negotiations between senior executives. Should such negotiation fail to resolve the matter, as defined by either party sending written notice to the other party of an impasse after at least one face-to-face negotiation meeting among senior executives of the parties, the matter shall be finally decided by David Ichel of X-Dispute, LLC or, if Mr. Ichel is not available, three (3) neutral arbitrators (the "Tribunal") seated in New York, New York under the AAA Arbitration Rules (the "Rules").

(D.I. 45, Ex. C.) Rule 7(a) of the American Arbitration Association Commercial Arbitration Rules and Mediation Procedures, amended and effective as of October 1, 2013 ("AAA Rules"), states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections . . . to the arbitrability of any claim or counterclaim."[2] Thus, the parties incorporated into their agreement arbitral institution rules that make arbitrability subject to arbitration. Accordingly, in accordance with New York precedent, Defendants submit that the parties evidenced a "clear and unmistakable" agreement to arbitrate arbitrability, satisfying *First Options*.

That said, Defendants recognize that one could argue that, based on the terms of Section 7 of the Agreement, the AAA Rules are only applicable "if Mr. Ichel is not available," in which case

---

[2] These AAA Rules are both the latest version of the AAA's Commercial Arbitration Rules as well as the version that was operative at the time the Agreement was executed. They are available at https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf.

The Honorable Richard G. Andrews
July 15, 2022
Page 3

the arbitration is to be decided by three arbitrators. In other words, Defendants recognize that the application of the AAA Rules arguably is conditional. We have conducted a search, but have not found any cases decided under New York law that expressly address the issue of who decides arbitrability when arbitral institution rules are incorporated into an arbitration agreement, but their application is arguably conditional.

Notwithstanding this issue, Defendants submit that, "to give fair meaning to all of the language" in Section 7 of the Agreement and "reach a practical interpretation of the expressions of the parties" therein, *NRT New York*, 131 A.D.3d at 954, the Court should conclude that the parties intended the AAA Rules to apply to any arbitration pursuant to the Agreement, whether before Mr. Ichel or before three neutral arbitrators. This is because the AAA Rules provide various powers to arbitrators appointed in accordance therewith, including, *inter alia*, the power to decide arbitrability. It is not reasonable to conclude that the parties intended to provide fewer powers, such as the power to decide arbitrability, to the arbitrator they specifically agreed to—Mr. Ichel—compared to the three unspecified arbitrators to be appointed only in the event Mr. Ichel is unavailable.

In any event, in the particular context of this case and Defendants' pending Motion to Dismiss (D.I. 44), the issue of who decides arbitrability may not have much, if any, practical significance. Defendants' Motion to Dismiss seeks, in the first instance, dismissal of the entire action for lack of standing and/or because the alleged claims were released. Defendants seek an order to compel arbitration only in the alternative, *i.e.*, only to the extent that the Court concludes that Plaintiff has presented a legitimate dispute concerning the scope of the license rights under the Agreement (as relevant to the issue of standing), or the scope of the releases therein. If the Court concludes there are any such legitimate disputes, it should stay this action and compel arbitration—and any remaining question of arbitrability will be quite narrow or non-existent. Indeed, the parties agreed to arbitrate "any dispute concerning [the Agreement], its construction, or its actual or alleged breach" (D.I. 45, Ex. C § 7), and a dispute about the license rights and releases in the Agreement indisputably constitutes such a dispute. Regardless of who decides arbitrability, Defendants cannot envision how someone could reach a contrary conclusion.

Finally, we wish to advise the Court that, in the case that prompted the Court's request, *San Rocco Therapeutics, LLC v. Memorial Sloan-Kettering Cancer Center, et al.*, Case No. 21-cv-08206 (S.D.N.Y. filed Oct. 5, 2021), Plaintiff recently filed a proposed Second Amended Complaint. (D.I. 74, Ex. 1.) This proposed pleading includes a fraudulent inducement claim based on the releases in the Agreement. According to Plaintiff, Memorial Sloan-Kettering Cancer Center ("MSK") fraudulently induced it to enter into the Agreement by allegedly omitting the fact that MSK was releasing Defendants from the infringement claims at issue in the case. We believe this proposed pleading constitutes further evidence in support of Defendants' request for dismissal of this action. Accordingly, we intend to discuss this matter with Plaintiff's counsel and, after we do so, we may request that the Court consider Plaintiff's allegations in that proposed pleading in connection with Defendants' pending Motion to Dismiss (D.I. 44).

Should the Court wish to discuss anything herein, we are of course available to do so at the Court's convenience.

The Honorable Richard G. Andrews
July 15, 2022
Page 4

                                Respectfully,

                                */s/ Jeremy A. Tigan*

                                Jeremy A. Tigan (#5239)

cc:    All Counsel of Record (via CM/ECF and e-mail)